MICHAEL T. GEBHART, ESQ.
Nevada Bar No. 7718
728 Fortacre Street
Henderson, Nevada 89002
Telephone: 702.324.8341
michael.gebhart@hotmail.com
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| NICHOLAS A. LIVEING-MACDONALD, | CASE NO.: 2:15-CV-2433 |
| Plaintiff, | |
| vs. | |
| CLARK COUNTY SCHOOL DISTRICT, a political subdivision of the STATE OF NEVADA, | **COMPLAINT** |
| | **JURY TRIAL REQUESTED** |
| Defendant. | |

NICHOLAS A. LIVEING-MACDONALD complains as follows:

### JURISDICTION AND VENUE

1. This action is brought to enforce Title I of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12111, *et. seq*. This Court has jurisdiction of the action under 42 U.S.C. § 2000e-2 and 28 U.S.C. § 1331.

2. This action also includes claims arising out of Nevada anti-discrimination statutes, N.R.S 613.310, *et. seq*., which are joined pursuant to 28 U.S.C. § 1367(a).

3. Venue is appropriate pursuant to 28 U.S.C. § 1391 because Defendant Clark County School District ("CCSD") is located in Clark County, Nevada, and all of the events or omissions giving rise to the claims occurred in Clark County, Nevada.

### PARTIES

4. Liveing-Macdonald, age 64, is a resident of Clark County, Nevada, and at all times herein was an "employee" of CCSD, within the meaning of 42 U.S.C. § 12101, *et. seq*.

5. Liveing-Macdonald is a "qualified individual" with a disability within the meaning of 42 U.S.C. §§ 12102 and 12111(8). He is substantially limited in the major life activity of hearing,

1

but is able to perform the essential functions of a middle school science teacher with a reasonable accommodation.

6. CCSD is the fifth largest school district in the United States employing hundreds of employees and operating with a budget exceeding three billion dollars.

7. CCSD is a person within the meaning of 42 U.S.C. § 12111(7) and 42 U.S.C. § 2000e. CCSD is an employer within the meaning of 42 U.S.C. § 12111(5) and a covered entity within the meaning of 42 U.S.C. § 12111(2). As an employer in Nevada, CCSD is required to comply with all state and federal statutes that prohibit discrimination based on an individual's disability.

**FACTS**

8. Liveing-Macdonald an honorably-discharged military veteran having served his country in the United States Navy. Liveing-Macdonald served on war ships launching munitions aircraft. In his position as a telecommunications supervisor, Liveing-Macdonald was prohibited from wearing hearing protection as it might interfere with his job duties.

9. During his 23-plus years of service, Liveing-Macdonald's hearing was permanently damaged, preventing him from fully enjoying the major life activity of hearing. At times, Liveing-Macdonald was exposed to deafening noises twelve hours per day, seven days a week. Liveing-Macdonald's condition continues to deteriorate over time.

10. After his career in the Navy, Liveing-Macdonald availed himself of the Troops to Teachers ("TTT") program, established by the Department of Defense. The primary objective of TTT is to help recruit quality teachers for schools that serve low-income families throughout America. TTT helps relieve teacher shortages, especially in math, science, special education and other high-needs subject areas, and assists military personnel in making successful transitions to second careers in teaching.

11. As of August 4, 2010, Liveing-Macdonald satisfied all requirements to become a licensed middle school science teacher in Nevada (License No. 88955).

12. On August 18, 2010, CCSD hired Liveing-Macdonald. Naturally, CCSD believed Liveing-Macdonald was qualified to perform the essential functions of a middle school science teacher with a reasonable accommodation under the ADA.

13. CCSD assigned Liveing-Macdonald to John C. Fremont Middle School, where he served as an eighth grade science teacher.

14. CCSD paid Liveing-Macdonald a base salary of $36,964.00 per year, plus a benefit package worth approximately $15,000 per year, for a total compensation package of over $50,000.00 per year.

15. CCSD was aware of Liveing-Macdonald's disability at the time he was hired. Not only is Liveing-Macdonald actually disabled, he has a record of such disability and CCSD regards him as disabled.

16. In August 2010, CCSD assigned a contracted, third party, "oral interpreter" to Liveing-Macdonald's classroom. The interpreter attempted to use sign language with Liveing-Macdonald, which proved to be completely useless, as Liveing-Macdonald does not use or understand sign language – a fact Liveing-Macdonald clearly communicated to CCSD at the time of hire.

17. In January 2011, Liveing-Macdonald underwent the first of three procedures for bi-lateral cochlear implant surgery in an effort to improve his hearing. The procedure, paid for by the Veteran's Administration, helped somewhat but not to the degree necessary to allow Liveing-Macdonald to effectively communicate with a full classroom of eighth-graders.

18. For example, Liveing-Macdonald was unable to effectively communicate with students due to excessive background noises such as other students talking, was unable to hear announcements over the PA system, and was unable to use the classroom telephone.

19. Accordingly, Liveing-Macdonald requested reasonable accommodations in order to perform the essential functions of his job, a request fully supported by a report from an audiologist employed by the Veteran's Administration.

20. Among other things, Liveing-Macdonald requested a TTY telephone and other classroom modifications that would assist him.

21. Most importantly, Living-Macdonald requested "CART," which stands for Communication Access Real-time Translation.

22. CART may also be referred to as real-time captioning. CART is used by persons with hearing disabilities who use English as their first language and/or their language of instruction. Most often, the person with a hearing disability can voice for him or herself (expressive communication) and uses CART to understand what others are saying, especially in meetings, classrooms or large events (receptive communication).

23. A captioner (CART provider) uses a court reporting stenography machine, a computer and software to display everything that is being said, word for word. The text is displayed on a computer, television or projection screen.

24. Liveing-Macdonald's request for CART as a reasonable accommodation triggered CCSD's obligation to engage in the mandatory "interactive process." *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000).

25. The interactive process is an engagement between an employee and employer and is a vital part of the ADA, as it is the primary vehicle to determine whether an accommodation is reasonable.

26. CCSD refused to engage in the interactive process and refused to provide CART to Liveing-Macdonald.

27. Instead, in early September 2011, CCSD told Liveing-Macdonald that his request was "unreasonable" because of "extremely high costs" and because of the "disruption it might cause for [his] students."

28. Liveing-Macdonald complained, numerous times, that CCSD made no effort to demonstrate an actual undue financial hardship or actual disruption to students.

29. It is likely that CCSD refused to engage in the mandatory interactive process because it knew that it could not deny using CART in other classrooms.

30. After refusing to engage in the interactive process to ascertain if CART was a reasonable accommodation, CCSD took its disregard for Liveing-Macdonald's disability to the next level.

31. On April 27, 2012, CCSD, in an act of retaliation, terminated Liveing-Macdonald under the false pretense that poor performance reviews, initiated after his request for CART, justified his termination.

32. After CCSD terminated Liveing-Macdonald, he attempted to mitigate his damage by looking for similar work. Liveing-Macdonald experienced great difficulty in obtaining employment in his chosen profession after being unfairly stigmatized for alleged poor performance.

33. Discrimination occurs when an employer fails to make reasonable accommodations for an employee's disability. *See McGary v. City of Portland*, 386 F.3d 1259, 1265-66 (9th Cir. 2004).

### EXHAUSTION OF ADMINISTRATIVE REMEDY

34. After CCSD terminated Liveing-Macdonald he filed Charge No. 487-2012-00779 with the EEOC / NERC based on disability discrimination and retaliation.

35. On September 30, 2014, the EEOC / NERC issued a Determination supporting a finding that there is reasonable cause to believe that CCSD denied Liveing-Macdonald a reasonable accommodation because of his disability and discharged Liveing-Macdonald for opposing discrimination.

36. Conciliation between CCSD and Liveing-Macdonald was unsuccessful.

37. On October 7, 2015, the United States Department of Justice issued Liveing-Macdonald a Notice of Right to Sue.

38. Liveing-Macdonald has filed this action within 90 days of receipt of the Notice of Right to Sue.

### FIRST CAUSE OF ACTION
### (DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE – ADA)

39. The allegations of the foregoing paragraphs are incorporated herein by reference.

40. CCSD's failure to provide a reasonable accommodation to the known physical disability of Liveing-Macdonald, a qualified employee, when the accommodation would not impose an

undue hardship on the operation of CCSD's business, constitutes discrimination on the basis of disability in violation of Title I of the ADA, 42 U.S.C. § 12112(b)(5)(A).

41. Liveing-Macdonald is entitled to damages for backpay, frontpay, lost benefits, and compensatory damages for emotional pain, suffering, inconvenience, anguish and loss of enjoyment of life.

42. Because CCSD is guilty of oppression it must pay an additional amount for the sake of example and by way of punishment.

43. Liveing-Macdonald has been forced to engage the services of an attorney to represent him in this matter and is entitled to an award of reasonable attorney's fees.

## SECOND CAUSE OF ACTION
### (RETALIATION – ADA)

44. The allegations of the foregoing paragraphs are incorporated herein by reference.

45. Liveing-Macdonald engaged in conduct protected by the ADA, namely, complaining about CCSD's failure to engage in the mandatory interactive process after his request for reasonable accommodations were summarily rejected.

46. After he complained, CCSD subjected Liveing-Macdonald to an adverse employment actions consisting of false and/or inaccurate performance appraisals followed by termination.

47. There is a causal link between Liveing-Macdonald's complaint and the adverse employment actions.

48. Liveing-Macdonald's complaint was a motivating factor and/or sole or exclusive reason for the adverse employment actions.

49. Liveing-Macdonald is entitled to damages and an award of reasonable attorney fees.

## THIRD CAUSE OF ACTION
### (DISABILITY DISCRIMINATION – NRS 613.330, *et. seq.*)

50. The allegations of the foregoing paragraphs are incorporated herein by reference.

51. The Nevada Supreme Court and federal courts in Nevada look to the ADA for guidance when applying Nevada's anti-discrimination statutes. *See Hirschhorn v. Sizzler Restaurants*

*Intern., Inc.*, 913 F. Supp. 1393, 1398 (D. Nev. 1995) (citing *Apececke v. White Pine Cnty*, 615 P.2d 975, 977 (Nev. 1980)).

52. CCSD's actions constitute unlawful discriminatory employment practices under Nevada's Equal Opportunities for Employment law, NRS 613.310, *et. seq*.

53. As a direct and proximate result of CCSD's actions, Liveing-Macdonald has suffered and shall continue to suffer monetary damages for the loss of income and benefits, bonuses, loss of promotional and/or advancement opportunities and violation of his federal and state rights unless and until the Court grants relief.

54. Liveing-Macdonald has been forced to engage the services of an attorney to represent him in this matter and is entitled to an award of reasonable attorney's fees.

### FOURTH CAUSE OF ACTION
### (TORTIOUS DISCHARGE IN VIOLATION OF PUBLIC POLICY)

55. The allegations of the foregoing paragraphs are incorporated herein by reference.

56. NRS 613.330(1) makes it an unlawful employment practice for an employer to discharge any person because of his disability. Because the Nevada Legislature has enacted legislation that forbids discrimination based on disability, such conduct is against public policy.

57. Wrongful conduct which harms an employee subjects an employer like CCSD to damages. *See, e.g.*, *Sands Regent v. Valgardson,* 777 P. 2d 898 (Nev. 1989).

58. CCSD's conduct violates the public policy of Nevada and has caused Liveing-Macdonald to suffer damages subject to proof at trial.

59. Liveing-Macdonald has been forced to engage the services of an attorney to represent him in this matter and is entitled to an award of reasonable attorney's fees.

### PRAYER FOR RELIEF

Liveing-Macdonald respectfully prays:

1. For a trial by jury on appropriate issues;
2. For all economic losses subject to proof;

3. For a declaration that the acts and practices complained of herein are in violation of Title VII of the Civil Rights Act of 1964, The Americans with Disabilities Act of 1990 and Nevada's Equal Opportunities for Employment law, NRS 633.310, et seq.;

4. For compensatory damages, exclusive of interest and costs;

5. For punitive damages;

6. For prejudgment interest;

7. For reasonable attorney's fees and costs incurred; and,

8. For such other relief as the Court shall deem just and proper.

## JURY DEMAND

Liveing-Macdonald demands that all issues in this case be tried by a jury in accordance with the Seventh Amendment of the U.S. Constitution and Rule 38(b) of the Federal Rules of Civil Procedure.

Dated this 21st day of December, 2015.

*Respectfully submitted by:*

/S/ MICHAEL T. GEBHART, ESQ.

MICHAEL T. GEBHART, ESQ.
728 FORTACRE STREET
HENDERSON, NEVADA 89002